# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHERRON LEWIS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10 CV 1819 |
| | ) |
| DAVID F. SCHMIDT, JAMES D. HOCK, | ) Honorable Joan B. Gottschall |
| JULIANA MALLER, GERI BERTOG, THE | ) |
| CITY OF PARK RIDGE, ILLINOIS, GENE | ) |
| BOBROFF, and NORMA C. WILLIAMS | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sherron Lewis, Jr. filed a *pro se* amended complaint under 42 U.S.C. §§ 1981-1983 and 1985-1986, the Fair Housing Act, and other theories against the City of Park Ridge, several Park Ridge officials, the record owner of his residence, and the owner's attorney after the City of Park Ridge disconnected the water service to his residence. On August 10, 2010, David Schmidt, James Hock, Juliana Maller, Geri Bertog, and the City of Park Ridge (the "city defendants") moved to dismiss his amended complaint.

## I. BACKGROUND

Sherron Lewis, Jr. has lived at 1010 N. Western Ave. in Park Ridge, Illinois since April 2009. (Am. Compl. ¶ 16.) Lewis sued Norma C. Williams – the title owner of the residence – in state court in 2009 in connection with the purchase and occupancy of the property. (*Id*. ¶¶ 10, 16.) On February 11, 2010, Lewis attempted to speak to the City of Park Ridge's water billing office about an unusually high water bill. (*Id*. ¶¶ 20-21.) However, Lewis alleges that instead of assisting him, Geri Bertog, a water billing clerk, informed him that the water billing office could not discuss the bill with him because his name was not on the title to the home. (*Id*. ¶ 22.) After

Lewis continued to insist that someone speak with him about the bill, Bertog allegedly called the police. (*Id*. ¶ 26.) Two armed police officers arrived shortly thereafter. (*Id.* ¶ 27.) The officers declined to arrest Lewis, issue a citation, or file a report about the incident. (*Id.* ¶ 29.)

After Lewis left Park Ridge City Hall, he called City Manager James D. Hock. (*Id.* ¶ 30.) According to Lewis, Hock agreed to provide him with a copy of the municipal code section that prevented the water billing office from speaking with him about the bill. (*Id.* ¶ 31.) Lewis alleges that Hock said he would get back to him the next day. (*Id.*) However, according to Lewis, more than two weeks passed before Hock responded to him on March 1, 2010 despite Lewis' repeated attempts (on February 12th, 17th, 18th, and 22nd) to contact Hock via phone and email. (*Id.* ¶¶ 32-35.) In his February 22, 2010 email, Lewis refers to "the water departments [sic] refusal to get the billing issue and disputed amount resolved." (*Id.* Ex. E.) On February 26, 2010, Lewis' water was shut off. (*Id.* ¶ 36.)

On March 1, 2010, both Hock and David Schmidt, Mayor of the City of Park Ridge, informed Lewis via email that the outstanding water bill must be paid before the water service to Lewis' residence could be turned back on. (*Id.* ¶¶ 38, 43, Ex. G, & Ex. K.) According to Lewis, on or about March 3, 2010, Deputy City Manager Juliana Maller also refused to turn Lewis' water back on. (*Id.* ¶¶ 44-47.) In a March 16, 2010 letter to Lewis, Maller wrote, "[T]he owner of record of the property at 1010 N. Western has informed the City that no one is currently authorized to occupy that home and that water service is unnecessary." (*Id.* Ex. M.) Lewis alleges that the "owner of record" could only be Norma C. Williams, and it must have been Williams, or her attorney, Gene Bobroff, who told the City that water service was unnecessary. (*Id*. ¶¶ 50-51.) On March 19, 2010, Lewis' water was turned back on. (*Id*. ¶ 52.)

Also relevant to Lewis' claims is Section 11-1-13(A) of the City of Park Ridge Municipal Code, which provides, in pertinent part:

> The City will provide written notice of impending termination of water service to the consumer at least seven (7) days prior to the termination of such service. The notice shall state . . . that the service will be terminated on the stated date unless within that time period the City receives a written request from the owner, occupant or user stating a desire to dispute or discuss the delinquent payment, in which case a hearing will be scheduled before the Finance Director or his/her designee prior to discontinuation of service.

Park Ridge, Ill., Mun. Code § 11-1-13(A) (1999).

## II. LEGAL STANDARD

Rule 12(b)(6) enables a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (*quoting Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the plaintiff must provide enough

factual allegations to state a claim for relief that is not only conceivable, but "plausible on its face." *Id.* at 555 & 570; *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. *Pro se* complaints, such as Lewis', are given greater latitude. *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

### III. ANALYSIS

**A. Claims against Schmidt, Hock, Maller, and Bertog in their official capacities**

Lewis has sued Schmidt, Hock, Maller, and Bertog in both their individual and official capacities. However, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Accordingly, since the City of Park Ridge has received notice and an opportunity to respond, Lewis' suit – to the extent that he names Schmidt, Hock, Maller, and Bertog in their official capacities – will be treated as a suit against the City of Park Ridge.

In order to state a claim under §§ 1981, 1982, 1983, or 1985 against a municipality, a plaintiff must allege that the municipality had an official policy or custom that caused the injury. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Alexander v. Milwaukee*, 474 F.3d 437, 448 (7th Cir. 2007) ("Section 1981, like § 1983, also requires a plaintiff to demonstrate an official policy or custom in order to allow for municipal liability."); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (a plaintiff must allege

4

an official policy or custom in order to state a claim against a municipality under § 1985); *Crestview Vill. Apts. L.P. v. United States HUD*, No. 01-C-6913, 2002 U.S. Dist. LEXIS 26508, at *12 (N.D. Ill. Feb. 7, 2002) (a plaintiff must allege an official policy or custom in order to state a claim against a municipality under § 1982).

The city defendants argue that Lewis' claims against the City of Park Ridge and against Schmidt, Hock, Maller, and Bertog in their official capacities must fail because Lewis has not alleged that his injuries resulted from an official policy or custom of the City of Park Ridge. (Mot. to Dismiss at 13.) The court disagrees. Lewis may fulfill the requirement that he allege that his injuries resulted from an official policy or custom by pleading that his injuries resulted from 1) an express policy, 2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" or 3) "the actions of a person with 'final policymaking authority.'" *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999) (*citing Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994), *and quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). While Lewis has not pled that his injuries resulted from an express policy or a *de facto* custom, if the court construes Lewis' amended complaint liberally – as it must with a *pro se* plaintiff – then it is apparent that Lewis has alleged that his injuries resulted from the decision of at least one city official with final policymaking authority. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . .'") Lewis does so when he alleges that both City Manager Hock and Mayor Schmidt personally refused to reinstate his water service or grant him a

hearing,[1] and notes that the City of Park Ridge Municipal Code "states that the City Manager oversees the operations of all City Departments and further, that the City Manager receives his directions from the Mayor." (Am. Compl. ¶¶ 39 & 42-43.) Thus, Lewis' claims against the City of Park Ridge and against Schmidt, Hock, Maller, and Bertog in their official capacities will not fail on this basis.

**B.     Count I**

1.     <u>Lewis' Malicious Prosecution Claim Against Bertog</u>

Lewis argues that Bertog engaged in malicious prosecution when she allegedly called the police. Under Illinois law, to state a claim for malicious prosecution, a plaintiff must allege: "(1) commencement of criminal proceedings by the [defendant]; (2) termination of that matter in favor of the [plaintiff]; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). "In Illinois, criminal proceedings are commenced by the filing of a complaint, an indictment, or an information." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001). In addition, "[l]egal causation will be attributed to a private citizen" – as opposed to a law enforcement officer – "only if the plaintiff can demonstrate that the defendant (1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Id.* Lewis concedes that the officers who responded to Bertog's call declined to arrest him, issue a citation, or make a report. (Am. Compl. ¶ 29.) Given this, Lewis' malicious

---

[1]     Lewis alleges that "Mr. Hock refused to restore the water and sewer service to the Plaintiff's residence and set the matter for hearing . . . ." (Am. Compl. ¶ 39.) In support of this allegation, Lewis attached an email he allegedly received from Hock, in which Hock wrote, "The delinquent amount due must be paid before the City will turn your water back on." (Am. Compl. Ex. G.) In addition, Lewis alleges that, "Schmidt refused to restore or direct the water billing office to restore the water and sewer service to the Plaintiff's home and set the matter for hearing . . . ." (Am. Compl. ¶ 43.) In support of this allegation, Lewis attached an email that he allegedly received from Schmidt in which Schmidt wrote, "I do not have the authority to order that your water be restored, nor would I if I did. The bill in unpaid. Once the bill is paid, the water will be restored." (Am. Compl. Ex. K.)

6

prosecution claim is dismissed because Lewis has not and cannot allege that Bertog caused criminal proceedings to be initiated against him.

2.  Lewis' claim under the Illinois Public Utilities Act

Also in Count I, Lewis appears to bring a claim pursuant to the Illinois Public Utilities Act, which provides:

> It is the policy of this State that no person should be denied essential utility service during the winter months due to financial inability to pay. It is also the policy of this State that public utilities and residential heating customers deal with each other in good faith and fair manner.

220 Ill. Comp. Stat. Ann. 5 / § 8-201 (West 2010). However, as the city defendants correctly point out, the Illinois Public Utilities Act does not apply to public utilities owned by municipal corporations. *Id.* § 3-105 ("'public utility' does not include . . . public utilities that are owned and operated by any . . . municipal corporation of this State . . . or public utilities that are owned by such . . . municipal corporation and operated by any of its lessees or operating agents"). As the City of Park Ridge is a municipal corporation of the state of Illinois, the Illinois Public Utilities Act does not apply to its water service, and Lewis cannot state a claim on this basis.

Thus, the city defendants' motion to dismiss is granted as to Count I of Lewis' amended complaint. Count I of Lewis' amended complaint is dismissed.

**C.    Count II**

For the second count of his amended complaint, Lewis brings a claim under the equal benefit clause of 42 U.S.C. § 1981 alleging that Schmidt, Hock, Maller, Bertog, Bobroff, and Williams violated the Fifth and Fourteenth Amendments of the United States Constitution when they did not give him the equal benefit of Section 11-1-13(A) of the City of Park Ridge Municipal Code, providing process for disputes involving water bills. Park Ridge, Ill., Mun.

Code § 11-1-13(A) (1999). Lewis also cites 42 U.S.C. § 1982 in the heading of the second count of his amended complaint.

1.   Lewis' Section 1982 claim

Section 1982 provides, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Because Lewis does not allege that any of the city defendants deprived him of his right to inherit, purchase, lease, sell, hold, or convey real or personal property, his § 1982 claim is dismissed without prejudice for failure to state a claim.[2]

2.   Whether Lewis can bring a Section 1981 claim directly against the City of Park Ridge, a municipality.

Regarding Lewis' § 1981 claim, the city defendants argue that, as an initial matter, per *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989), § 1983 provides the exclusive remedy when state actors violate § 1981. (Mot. to Dismiss at 7.) However, whether this holding from *Jett* remains good law is an unsettled question. While five circuit courts and many district courts are of the opinion that this holding from *Jett* remains good law, the United States Court of Appeals for the Ninth Circuit and many district courts have held that the Civil Rights Act of 1991 superseded *Jett's* holding that § 1983 provides the exclusive federal remedy against municipalities for violations of § 1981. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 117-18 (3rd Cir. 2009) (collecting cases); *see also Simmons v. Chicago Bd. of Educ.*, No. 97 CV 5451, 2000 WL 1720958, at *6 (N.D. Ill. Nov. 16, 2000) (collecting cases). The United States Court of Appeals for the Seventh Circuit has not spoken on

---

[2]   Lewis is granted leave to replead his § 1982 claim within 30 days if he can do so consistent with his Fed. R. Civ. P. 11 obligations.

8

the issue. Given this, this court declines to dismiss Lewis' § 1981 claim on this basis at this early stage.

3. Lewis' Section 1981 claim

Section 1981 provides:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> . . .
>
> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

In order to state a claim under § 1981, a plaintiff must allege that (1) s/he is a member of a racial minority; (2) the defendants intended to discriminate on the basis of race, and (3) the discrimination deprived the plaintiff of one or more rights enumerated in § 1981. *Black Agents & Broker's Agency v. Near North Ins.*, 409 F.3d 833, 837 (7th Cir. 2005).

Lewis has met the first prong because he is African American. (Am. Compl. ¶ 4.) He has met the second prong because he has alleged that Schmidt, Hock, Maller, Bertog, Bobroff, and Williams deprived him of the equal benefit of Section 11-1-13(A) of the City of Park Ridge Municipal Code, which provides for an opportunity for a hearing before one's water service is terminated, "solely because of his skin color and to illegally force [him] to move from the community". (*Id.* ¶ 66.) Thus, all that remains to be decided is whether Lewis has satisfied the third prong.

The city defendants argue that Lewis' allegations "do not fall under the purview of Section 1981" since "[n]o contract is at issue, and neither is the Plaintiff's ability to participate in the legal system and legal process." (Mot. to Dismiss at 6.) However, although most § 1981 litigation arises from the "make and enforce contracts" clause of § 1981, *Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. 1995), protecting the creation and enforcement of contracts is not the only function of § 1981. *Palmer v. Bd. Of Educ. Comm. Unit School Dist.*, 46 F.3d 682, 686-87 (7th Cir. 1995). The court must also give force to that part of the statute that protects a person's right to "full and equal benefit of all laws and proceedings" and provides that all persons "shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. As the Seventh Circuit explained when construing the equal benefit clause in *Palmer*:

> If the state enforces contracts among white persons, it has to give blacks the same benefit – and in the same way, giving equal damages for equal wrong done. If it affords tort remedies to whites, it must afford equal remedies to blacks. If it prosecutes crimes against whites in order to protect their persons and property, it must prosecute crimes against blacks. And it must use the same rules when assessing 'punishment, pains, penalties, taxes, licenses, and exactions of every kind.' The law is designed, in contemporary language, to forbid disparate treatment.

*Palmer*, 46 F.3d at 687. Thus, in Lewis' case, if Schmidt, Hock, Maller, and Bertog followed the procedures set forth in Section 11-1-13(A) of the City of Park Ridge Municipal Code for whites, then they were obligated to follow the procedure for Lewis. Because Lewis alleges that Schmidt, Hock, Maller, and Bertog deprived him of the equal benefit of Section 11-1-13(A) of the City of Park Ridge Municipal Code, the city defendants' motion to dismiss Lewis' amended complaint is denied as to Count II.

**D.     Count III**

Lewis argues that he should be granted relief under 42 U.S.C. § 1983 because the defendants violated his due process rights when they terminated his water service without giving him an opportunity for a hearing. To state a claim under § 1983, a plaintiff must allege that (1) a person acting under color of state law (2) deprived the plaintiff of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). It is undisputed that Lewis met the first requirement as to the city defendants by alleging that four employees of the City of Park Ridge were acting on behalf of the City of Park Ridge. *See id*. at 50 (noting, "Thus, generally, a public employee acts under color of state law while acting in his official capacity . . . .") Thus, the only issue that remains to be decided is whether Lewis has alleged the second element – that the acts of the city defendants deprived him of a constitutional right.

As the Supreme Court has explained, "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). "Property interests are not created by the Constitution, but rather they are 'created' and 'defined by existing rules or understandings that stem from an independent source such as state law.'" *Sterling v. Village of Maywood*, 579 F.2d 1350, 1353 (7th Cir. 1978) (*quoting Roth*, 408 U.S. at 577).

A water user does not have a constitutionally protected property interest in continued water service where no state law, municipal ordinance, or implied contract provides the user with a legitimate claim of entitlement to water service. In *Sterling*, 579 F.2d at 1352-53, Sterling argued that the Village of Maywood and several of its officials violated her due process rights when they shut off her water service without notice and an opportunity for a hearing. Given that she was a tenant under an oral lease whose name was not on the title to the home or on the water

bill, the court treated her as a mere water user. *Sterling*, 579 F.3d at 1355. The court held that Sterling did not have a constitutionally protected property interest in continued water service. The court reasoned that there was no state law, municipal ordinance, or implied contract that provided her with a legitimate claim of entitlement to water service. *Sterling*, 579 F.3d at 1354.

Lewis' case is easily distinguishable from *Sterling* because the municipal code of the City of Park Ridge provides Lewis with a legitimate claim of entitlement to water service. Section 11-1-13(A) of the City of Park Ridge Municipal Code provides:

> . . . [water] service will be terminated on the stated date unless within that time period the City receives a written request from the owner, occupant *or user* stating a desire to dispute or discuss the delinquent payment, in which case a hearing will be scheduled before the Finance Director or his/her designee prior to discontinuation of service.

Park Ridge, Ill., Mun. Code § 11-1-13(A) (1999) (emphasis added). The municipal code expressly provides users who have expressed a desire to dispute or discuss their bill in writing with an entitlement to a hearing before their water service can be terminated. On February 22, 2010, Lewis emailed Hock, "I have tried several times, via email and by phone to reach you concerning the bill at 1010 N. Western Ave, Park Ridge and the issues regarding the water departments [sic] refusal to speak with me to get the billing issue and disputed amount resolved." (Am. Compl. Ex. E.) Lewis is clearly a user who put his desire to discuss or dispute his bill in writing. Given this, Lewis has a legitimate claim of entitlement to water service.

The city defendants argue that Lewis has "no legitimate claim to any alleged property interest in water service . . . because he was not a lawful occupant . . . ." (Mot. to Dismiss at 8.) However, the city defendants do not cite any authority to support this argument. Unsupported arguments are deemed waived. *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (*quoting United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), and noting, "We have

12

repeatedly warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .'") Because Lewis alleged that the city defendants acted under color of state law to deprive him of his constitutionally protected property interest in continued water service, the city defendants' motion to dismiss his amended complaint is denied as to Count III.

**E.    Count IV**

Lewis argues that he should be granted relief under the second part of 42 U.S.C. § 1985(2) because Schmidt, Hock, Maller, Bertog, Williams, and Bobroff allegedly conspired to deprive him of water and sanitary sewer service in violation of his civil rights and did so "to illegally force him to move from the community solely because of the color of his skin." (Am. Compl. ¶ 75.) The second part of subsection (2) of § 1985 provides:

> . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, . . . .

42 U.S.C. § 1985(2). Subsection (3) continues:

> in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (3).

The city defendants argue that Lewis' § 1985(2) claim must be dismissed because his allegations do not fall within the purview of the second part of § 1985(2) since Lewis' does not allege a conspiracy related to the judicial process. (Mot. to Dismiss at 9.) However, the city defendants do not cite any authority for the proposition that the second part of § 1985(2) applies only to conspiracies related to the judicial process rather than to all obstruction of justice

committed with the intention to deny a person equal protection of the laws. (*See* Mot. to Dismiss at 9.) As noted before, unsupported arguments are deemed waived. Lewis' Count IV survives.

**F.     Count V**

For his Count V, Lewis argues that he should be granted relief under 42 U.S.C. § 1986 because each of the defendants failed to prevent the alleged conspiracy to violate his civil rights. (Am. Compl. ¶ 81.) The city defendants argue that Lewis' § 1986 claim must fail because his § 1985 claim fails. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (*citing Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992), and holding, "[B]ecause Smith has failed to state a § 1985 claim, his § 1986 claim fails as well.") However, Lewis' § 1985 claim survives, so Count V also survives.

**G.     Count VI**

For his Count VI, Lewis argues that he should be granted relief under subsections (a) and (b) of Section 3604 of the Fair Housing Act, 42 U.S.C. § 3604(a)-(b), because the defendants disconnected his water service to force him to move from the predominantly white community of Park Ridge because of his race. (Am. Compl. ¶ 85.) Those subsections provide:

> [I]t shall be unlawful--
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604.

Since Lewis does not allege the sale or rental of a dwelling, § 3604(b) does not apply. *See Southend Neighborhood Imp. v. County of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1987)

(stating that Section 3604(b) prohibits "discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling.")  In addition, the first two clauses of § 3604(a) do not apply – Lewis does not allege that the city defendants refused to a) sell or rent, or b) negotiate for the sale or rental of a dwelling to him.

The third clause of § 3604(a), however, which states that it shall be unlawful to "otherwise make unavailable or deny[] a dwelling to any person because of race . . . ," 42 U.S.C. § 3604(a), "is not tethered to the words 'sale or rental' that constrain the other two § 3604(a) clauses."  *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009).  Thus, "§ 3604(a) may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction."  *Id.* (*citing Evans v. Tubbe*, 657 F.2d 661, 662-63 & n.3 (5th Cir. Unit A Sept. 1981)).  In order to allege constructive eviction, a plaintiff must allege that his/her "residence is 'unfit for occupancy,' often to the point that she is 'compelled to leave.'"  *Id.* at 777 (*quoting* BLACK'S LAW DICTIONARY 594 (8th ed. 2004)).  This allegation is necessary, but not sufficient, as "[a]vailability, not simply habitability, is the right that § 3604(a) protects."  *Id.* (*citing Southend*, 743 F.2d at 1210; *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 192 (4th Cir. 1999); *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 719 (D.C.Cir. 1991)).

Lewis has alleged the denial of water service for 21 days, which the court can infer made his home unfit for occupancy.  Furthermore, since water is a basic utility, its deprivation is not merely a matter of habitability.  *See Clifton Terrace Assocs.* at 719-20 ("[T]he denial of certain essential services relating to a dwelling, such as . . . basic utilities, might result in the denial of housing . . . .");  *Compare Bloch*, 587 F.3d at 777 (*citing Clifton Terrace Assocs., Ltd.*, 929 F.2d

at 719, which states, "A lack of elevator service is a matter of habitability, not availability, and does not fall within the terms of these subsections.")

Nevertheless, Lewis' § 3604(a) claim fails because he does not allege that he is either an owner or tenant or that the denial of water service caused him to vacate the premises; thus, it cannot be said that he was constructively evicted from the home or that the home was made unavailable to him. *See Bloch*, 587 F.3d at 776-79.  In *Bloch*, 587 F.3d 771 (7th Cir. 2009), the Seventh Circuit did not allow a § 3604(a) "make unavailable or otherwise deny" claim to proceed where the owners did not vacate the premises, although "[w]hether 'unavailability' means that a plaintiff must, in every case, vacate the premises to have a § 3604(a) claim is an issue [the Seventh Circuit] refrain[ed] from reaching."  *Bloch*, 587 F.3d at 778.  The Seventh Circuit, however, suggested that any eventual ruling on the issue would "depend[] on how the Supreme Court treats the potentially analogous concept of constructive termination."  *Id.* at 778 n.6 (*citing Marcoux v. Shell Oil Prods. Co.*, 524 F.3d 33 (1st Cir. 2008), *cert. granted sub nom. Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, --- U.S. ----, 129 S. Ct. 2788, 174 L. Ed. 2d 289 (2009)).  The Supreme Court ultimately held that "a necessary element of any constructive termination claim under the [Petroleum Marketing Practices] Act is that the franchisor's conduct *forced an end* to the franchisee's use of the franchisor's trademark, purchase of the franchisor's fuel, or occupation of the franchisor's service station."  *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, --- U.S. ----, 130 S. Ct. 1251, 1257, 176 L. Ed. 2d 36 (2010) (emphasis added).  Since the Supreme Court held that a plaintiff cannot have a constructive termination claim without a termination of the relationship, it appears that the Seventh Circuit would hold that a plaintiff cannot state a § 3604(a) "make unavailable or deny" claim without having vacated the premises.

Since Lewis fails to allege as much, his § 3604(a) cannot survive. Accordingly, Count VI is dismissed without prejudice.[3]

**H.     Count VII**

For Count VII, Lewis argues that, per 745 Ill. Comp. Stat. § 10/9-102, the City of Park Ridge should pay any damages for which any of its employees are liable. (Am. Compl. ¶¶ 89-91.) The city defendants argue that Lewis' Count VII should be dismissed because Lewis cannot state any valid claims against the individual defendants. (Mot. to Dismiss at 13.) Because Lewis has surviving claims against the individual defendants, this argument fails. The city defendants' motion to dismiss is denied as to Count VII.

## IV.     CONCLUSION

For the reasons stated above, the city defendants' motion to dismiss Lewis' amended complaint is granted in part and denied in part. Count I is dismissed. Count VI is dismissed without prejudice. Lewis' § 1982 claim – set forth in Count II – is dismissed without prejudice. Lewis' § 1981 claim – also set forth in Count II – survives. Counts III, IV, V, and VII survive.


ENTER:

                                 /s/
                                 JOAN B. GOTTSCHALL
                                 United States District Judge

DATED: January 4, 2011

---

[3] To the extent that he can allege that he is an owner or tenant, Lewis is granted leave to replead his Count VI within 30 days if he can do so consistent with his Fed. R. Civ. P. 11 obligations.