UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERRON LEWIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| DAVID F. SCHMIDT, JAMES D. HOCK, ) | No. 10 CV 1819 |
| JULIANA MALLER, GERI BERTOG, ) | |
| THE CITY OF PARK RIDGE, ILLINOIS, ) | |
| GENE BOBROFF, and ) | |
| NORMA C. WILLIAMS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Sherron Lewis, Jr., a pro se litigant, sued the City of Park Ridge ("the City") and six individuals, four of whom were City officials or employees (the "City defendants"), for violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986. His allegations were related to the City's disconnection of water service at the residence in which he was living.[1] Now before the court are the cross-motions for summary judgment brought by Lewis and the City defendants. The court concludes that, construing the evidence in Lewis's favor, he has failed to establish the required elements of any of the remaining counts in his complaint. Therefore, Lewis's motion for summary judgment is denied, and the City defendants' motion for summary judgment is granted.

---

[1] Lewis's amended complaint included seven counts. This court previously dismissed Count I & VI, along with claims in Count II brought under 42 U.S.C. § 1982. (*See* Mem. Op. and Order Jan. 4, 2011, ECF No. 43.) Five counts remain: four civil-rights claims and one count seeking indemnification of the City defendants by the City.

# I. BACKGROUND[2]

The City of Park Ridge is a municipal corporation incorporated in Illinois. David Schmidt is the Mayor of Park Ridge. James Hock is the City Manager. Juliana Maller is the Deputy City Manager. Geri Bertog is a Water Billing Clerk in the City's Finance Department. Lewis is an African American who lived at 1010 N. Western Avenue in Park Ridge from April 2009 until July 28, 2010.

Section 11-1-13(A) of the City of Park Ridge Municipal Code (the "Code") provides:

> The City will provide written notice of impending termination of water service to the consumer at least seven (7) days prior to the termination of such service. The notice shall state . . . that the service will be terminated on the stated date unless within that time period the City receives a written request from the owner, occupant or user stating a desire to dispute or discuss the delinquent payment, in which case a hearing will be scheduled before the Finance Director or his/her designee prior to discontinuation of service.

Park Ridge, Ill., Mun. Code § 11-1-13(A) (1999).

At all relevant times, Norma Williams was the owner of the property at 1010 N. Western Avenue. Williams never signed any document permitting Lewis to occupy the property, never gave Lewis consent to live at the property, and never gave Lewis any interest or rights in the property. Lewis had no written documents authorizing him to reside at the property. Lewis never asked Williams to put his name on the water account.

---

[2] The following facts are undisputed for purposes of summary judgment. Various statements in the City defendants' Local Rule 56.1(a)(3) Statement of Facts that are supported by record evidence have been deemed admitted because Lewis failed to cite a specific reason for disputing the fact and/or failed to cite record evidence demonstrating the dispute, as required by the Northern District of Illinois's Local Rule 56.1(b)(3)(B)-(C) and this court's Standing Order. Further, insofar as Lewis "disputes" facts by arguing about the inference to be drawn from the facts, the court does not consider that a substantive response and deems the facts admitted. For these reasons, Defendants' Facts ¶¶ 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 38, 45, 46, 52, 57, 64, 66, 67, 68, 69, 71, 72, and 73 are deemed admitted.

On November 3, 2009, Williams came to City Hall and spoke to Bertog. She notified Bertog that Lewis was a "squatter" who would not leave the property. Williams requested that the City not discuss the water account with Lewis. City policy requires that the Finance Department communicate only with the property owner or those authorized by the property owner.

Payment was made on water bills for 1010 N. Western Avenue in October 2009 and December 2009, in the amounts of $127 and $132. On February 11, 2010, Lewis came to City Hall and asked to speak with Bertog about the property's water account. Bertog told Lewis she could not discuss the account with him. At the time, Bertog did not remember that Williams had notified her that Lewis was a squatter. Lewis told Bertog that he was legally residing in the property and was trying to buy it. He then told her it was abandoned. He then told her that he and Williams had a contract concerning the property. Finally, he told Bertog that he was trying to remortgage the existing mortgage on the property. Bertog attempted to assist Lewis by asking other City staff to discuss the property transfer process with him.

Lewis did not request a hearing when speaking to Bertog, and Bertog was not involved in scheduling a hearing for Lewis. From the beginning of her employment on August 1, 2005, and her conversations with Lewis on February 11, 2010, Bertog never discussed a dispute involving a water bill with an individual who was not the owner or legal occupant of the property, and no water user who was not the owner or legal occupant had requested a hearing involving a water bill.

That same day, February 11, 2010, Lewis spoke to City Manager Hock by phone. He emailed Hock on February 12 and requested a copy of the City's water-service policy

"regarding the billing department's constriction on speaking with me as an occupant of this property."

A water shut-off notice was sent to 1010 N. Western Avenue on February 16, 2010, based on an unpaid water bill. Lewis emailed Hock again on February 17 requesting a reply. Lewis sent Hock another email on February 22 asking for someone to contact him. The email went into Hock's spam folder, and Hock did not see it until after water service to the property was shut off on February 26. Hock responded on March 1, 2010, stating, "The delinquent amount must be paid before the City will turn your water back on." Lewis wrote back asking why he was "not afforded the due process of a hearing" prior to the service being shut off. Hock replied, stating that "you are not the homeowner and are not named on this account. You were provided notice on 2/16 of the pending shut-off. You never requested any hearing." Lewis replied, asking, "Why is it even relevant that I am not the homeowner and am not named on this account was it was and **is** obvious that I am the resident?" He told Hock that he had sent him three emails regarding the disputed bill.

Lewis emailed Mayor Schmidt's office on March 1, 2010, stating that his water service had been disconnected "without any hearing or due process." He wrote that the fact "that I am African-American [is] perhaps the basis for the treatment I've received." Schmidt emailed Lewis back that day, telling Lewis that "if there is a hearing you were entitled to receive, I am asking [Hock] to make sure you get it. If you are not entitled to a hearing, then I ask him to provide an explanation as to why that is so." Lewis replied to Schmidt, summarizing what had happened and informing Schmidt that he had "a very keen sense of the presence of racism and the efforts and extremes that Whites engage in

for the express purpose of covering each others [sic] asses." Later that day, Schmidt responded by stating that he did not have the authority to order water service restored, adding, "nor would I if I did. The bill is unpaid. Once the bill is paid, the water will be restored."

Deputy City Manager Maller emailed Lewis on March 3, 2010, to schedule a time to discuss the bill. Lewis demanded that service be restored before a hearing was held. Maller offered to meet with Lewis on March 4. She informed Lewis that the outstanding bill was now $1,130.94, rather than the $895 represented as the basis for the shut-off. Maller sent Lewis a letter on March 16 informing him that a hearing would be held on March 18. Maller emailed Lewis on March 17 to confirm the hearing. Lewis did not respond until March 19, stating that he was out of town.

Water service was restored to 1010 N. Western Avenue on March 19. Maller informed Lewis that a hearing had been scheduled for March 22. Lewis asked that it be rescheduled for March 24, and a hearing was scheduled for that date. Lewis did not pay for water service to 1010 N. Western Avenue between February and July 2010.

Lewis stated during his deposition that the defendants acted to shut off water service to the property without a pre-deprivation hearing because of his race. He stated that the basis for his conspiracy allegations, pursuant to 42 U.S.C. §§ 1985 and 1986 was that the defendants "were all, obviously, communicating amongst each other."

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court

ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is called for when the nonmoving party is unable to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. ANALYSIS

**A. Equal Benefit Clause (§ 1981) Claim (Count II)**

Lewis brings a claim under the equal benefit clause of 42 U.S.C. § 1981, alleging that the defendants violated the Fifth and Fourteenth Amendments of the United States Constitution when they denied him the equal benefit of § 11-1-13(A) of the Code, providing process for disputes involving water bills. Lewis argues that he was entitled to a hearing before water service to his residence was disconnected because he had requested an opportunity to dispute the amount of the water bill. The Code states that in the event of a written request by an "owner, occupant, or user . . . a hearing will be scheduled before the Finance Director or his/her designee prior to discontinuation of service." Lewis argues that, based on the Code, he had a "legitimate claim of entitlement" to this process and to water service and that he was deprived of the equal benefit of the ordinance solely because of his race.

In order to prevail on a claim under § 1981, a plaintiff must establish that (1) he is a member of a racial minority, (2) the defendants intended to discriminate on the basis of race, and (3) the discrimination deprived him of one or more rights enumerated in § 1981. *Black Agents & Broker's Agency v. Near North Ins.*, 409 F.3d 833, 837 (7th Cir. 2005).

Lewis meets the first requirement, having established that he is a member of a racial minority. To meet the second requirement, Lewis must demonstrate that he suffered intentional discrimination. Construing all facts in Lewis's favor, the court concludes that he fails to present evidence that because of his skin color, any of the City defendants intentionally deprived him of a hearing before water service was disconnected. He has identified no direct evidence of discrimination—no "outright admissions" that actions were taken because of his race. *See Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). Nor has he presented circumstantial evidence of discrimination. No similarly situated white person was afforded a hearing under similar circumstances. *See id.* At least since August 1, 2005, no other user who was not a legal occupant had requested a hearing to dispute a water bill. Nor is there evidence that other African Americans were denied water service or otherwise subjected to questionable treatment by the City. *Hanners v. Trent*, 674 F.3d 683, 693 (7th Cir. 2012) (stating that "an inference of discriminatory intent" may be drawn from "ambiguous statements or behavior" toward others in the protected group).

The only evidence Lewis offers of intentional discrimination is that he is black and that the individual defendants are white. Only Bertog had in-person contact with Lewis before water service was shut off. Lewis did not make a request for a hearing to Bertog, and there is no evidence that she was involved in the dispute over whether he was entitled to a hearing. In sum, there is nothing in the record from which a fact-finder could infer that any actions were taken to deprive Lewis of water service without a hearing because of Lewis's race. Lewis fails to establish the second necessary element of his § 1981 claim. The court therefore does not need to discuss whether Lewis has

established the third element of a § 1981 claim or whether the City can be held liable for the actions of the individual defendants. The court grants summary judgment for defendants on Count II of Lewis's complaint.

**B. Due Process (§ 1983) Claim (Count III)**

Lewis argues that he should be granted relief under 42 U.S.C. § 1983 because the defendants violated his procedural due-process rights when they terminated his water service without giving him an opportunity for a hearing. As a necessary component of a procedural due-process claim, Lewis must identify a protected property or liberty interest. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Lewis claims that he had a constitutionally protected property interest in water service at 1010 N. Western Avenue. For water service to be a protected property interest, Lewis must "have [had] a legitimate claim of entitlement to it." *Id*. "A legitimate claim of entitlement to warrant a due process hearing occurs only when the statutes [or] regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Fincher v. South Bend Heritage Found.*, 606 F.3d 331, 334 (7th Cir. 2010).

Lewis points to the fact that the Code states that if, within seven days of receiving a shut-off notice, "the City receives a written request from the owner, occupant or user stating a desire to dispute or discuss the delinquent payment, . . . a hearing will be scheduled before the Finance Director or his/her designee prior to discontinuation of service." He claims that, as a "user" of the water service, this provision of the Code entitled him to a hearing.

A utility customer may have a protected property interest in sanitation services and a supply of potable water. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) (holding that due process required utility to provide its customers with some administrative procedure to entertain complaints prior to service termination). The problem for Lewis, however, is that he was not a "customer" of the Park Ridge water service. The City has presented uncontested evidence that Lewis was not a legal occupant of 1010 N. Western Avenue. Williams's name was on the water service agreement. The water bills and the disconnection notice were in her name. It follows that the right to dispute a bill and to demand a hearing before termination of water service belonged to her. Lewis had no contractual or quasi-contractual relationship with the water utility. *Cf. Wayt v. Town of Crothersville*, No. 10-cv-0081, 2012 WL 1098630, at *9 (S.D. Ind. Mar. 30, 2012) (holding that an "implied contract created a protected property interest in continued water service").

It is true, as Lewis argues, that he "used" the water at the property. But Williams never authorized Lewis to do so, and she told the City not to discuss the account with him and that no water service was needed at the property. Although the Code may be less than artfully drafted in this respect, it is reasonable to interpret the word "user" to mean either the actual customer of the utility or, at minimum, a person whose use is authorized by the customer—in other words, a legitimate user whose relationship with the water utility could create an expectation of continued service, *not* a person squatting in the property against the owner's will and using the owner's water service without permission. The court concludes that, under these circumstances, Lewis was not a legitimate user and had no legitimate claim of entitlement to water service.

Lewis has not presented evidence to establish that he was deprived of a protected property interest in water service. The court therefore has no need to discuss whether the process Lewis received was sufficient. The City defendants' motion for summary judgment on Count III of Lewis's complaint is granted.

**C. Conspiracy (§ 1985) and Duty to Aid (§ 1986) Claims (Counts IV and V)**

Lewis alleges that the defendants violated of 42 U.S.C. § 1985, by conspiring to violate his civil rights, and 42 U.S.C. § 1986, by failing to prevent a conspiracy to deprive him of constitutional rights. Section 1985 prohibits a conspiracy to deprive another of equal protection under the law. The conspiracy must be motivated by racial or other class-based discriminatory animus. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).

These claims are quickly dispensed with, as the court has already concluded that Lewis's civil rights were not violated when the water service at his residence was disconnected without a hearing. The Seventh Circuit has made clear that "the absence of any underlying violation of [a p]laintiff's rights precludes the possibility of [his] succeeding on a conspiracy claim." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011). In turn, because Lewis has failed to establish a § 1985 claim, his § 1986 claim must fail as well. *See Smith*, 550 F.3d at 617-18. The court therefore grants summary judgment for the City defendants on Counts IV and V of the complaint.

**D. Indemnification Claim (Count VII)** .

The final count of Lewis's complaint asserts that, pursuant to 745 Ill. Comp. Stat. 10/9-102, the City, as a local public entity, is required to pay any judgment for which its employees are liable, for actions taken within the scope of their employment. As Lewis's

claims against the individual City defendants fail, the City itself has no liability. The court grants summary judgment for the City on Count VII of the complaint.

**E. The Entry of Default against Bobroff and Williams**

Lewis originally sued only the City defendants, but he later amended his complaint to add Norma Williams and her attorney Gene Bobroff as defendants. When each failed to answer the amended complaint, Lewis moved for a default judgment against them. He attached to his motions for a default judgment an affidavit and proof of service. On November 12, 2010, this court entered an order of default—although not a default judgment—against Bobroff and Williams for failure to answer or otherwise plead, pursuant to Federal Rule of Civil Procedure 55(a). (*See* Minute Order Nov. 12, 2010, ECF No. 41.) The court now vacates that default pursuant to Rule 55(c), which states that a "court may set aside an entry of default for good cause."

The Seventh Circuit has held that a district court has "the authority to set aside *sua sponte* an entry of default against [a party] for good cause." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008). It explained, "Unlike Rule 60(b), Rule 55(c) does not refer to a motion but simply states that a 'court may set aside an entry of default for good cause.' In addition, we believe that a district court that has entered a default against a party retains 'the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity of relief by means other than a motion.'" *Id.* at 385-86 (quoting *Pierson v. Dormire*, 484 F.3d 486, 491 (8th Cir. 2007) and *Kingvision Pay–Per–View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351–52 (9th Cir. 1999)).

Here, the court believes that there is good cause to set aside the entries of default. First, the claims against Bobroff and Williams lack any merit whatsoever. The court frankly has difficulty contemplating what those claims might be. Lewis's complaint states that "Norma Williams is white," that Lewis sued her in state court, and that Bobroff is her legal counsel. The complaint further states that Maller informed Lewis that the City believed his occupancy of 1010 N. Western Avenue was not lawful, and that this information was provided to the City by "the owner of record," who had informed the city that "water service is unnecessary." This, Lewis states in the complaint, "could only have been Defendant Norma C. Williams and possibly speaking through her counsel, Defendant Gene Bobroff."

There are no other specific allegations in the complaint concerning the actions of Bobroff and Williams. Neither defendant was employed by the City and thus could not have violated Lewis's civil rights by denying him water service. None of the actions of either defendant that are alleged in the complaint could form the basis of a constitutional violation.

The court further believes that relief is necessary given the unusual circumstances of this case. The court is aware that the Colorado Attorney General brought a civil action against Lewis under the Colorado Consumer Protection Act for misleading consumers and giving legal advice on avoiding mortgage foreclosure without a license to practice law. *See Colorado v. Lewis*, No. 2010-cv-3537 (Jefferson Cnty. Dist. Court Jan. 13, 2011). The state court imposed a judgment against Lewis, including a fine of $10,000 for "conduct toward an elderly person" under C.R.S. 6-1-112(1)(c), and it permanently enjoined Lewis from participating in the mortgage-relief business. *See id*. Earlier, the

same court issued a preliminary injunction ordering Lewis to restore to Williams possession of her property and to pay her the fair-market rental value of her home for the time during with he had occupied it, for a total of $40,050. *Colorado v. Lewis*, No. 2010-cv-3537 (Jefferson Cnty. Dist. Court Aug. 16, 2010). By his own admission, Lewis has also sued Williams in Cook County court in an attempt to force her to transfer ownership of her home to him.

Williams's affidavits from the Colorado and Cook County cases, submitted as Exhibits 7 and 8 to Defendants' Rule 56.1 Statement of Facts, indicate that Williams is over the age of 75 and was unable to make the mortgage payments on her home. She stated that Lewis represented that he could save the home from foreclosure. He gained access to her property because she had left the keys in the mailbox for the lender. According to Williams, Lewis proceeded to prevent her from either living in her home or conducting a short sale of the home. He also "tied up" the home in a bankruptcy filing, preventing her from selling the property. Under the circumstances, including Williams's age, health, and the likely confusion caused by being caught up in legal battles in four different forums as a result of Lewis's actions, the court believes that Williams's failure to answer the complaint is excusable.

Given the background of fraudulent activity toward and possible harassment of Williams by Lewis—activity of which the court has become aware only after entering the default against her—the court now believes it is appropriate to vacate the order of November 12, 2010. The court does not wish to provide Lewis with further ammunition with which to abuse Williams. Bobroff's connection to this litigation, meanwhile, appears to be non-existent. Indeed, the complaint does not allege that Bobroff did

13

anything at all. The court therefore finds that good cause exists to vacate the default against him as well.

### IV. Conclusion

Because, construing all facts in favor of Lewis, he cannot establish the essential elements of his claims, the court denies Lewis's motion for summary judgment and grants summary judgment in favor of the City of Park Ridge and the City defendants on all remaining counts of Lewis's complaint. The court also vacates its November 12, 2010, order of default against defendants Williams and Bobroff.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 25, 2012